STATE *(Jeremiah Brown, com.)* v. AUGUSTUS B. COPELAND.

Where one section of a statute provided that on a given day the legal voters of the State should vote upon the question of repealing the statute, and that in case a majority of the votes should be in favor of a repeal, the said statute should have no effect after the tenth day from and after the rising of the General Assembly at the session at which the votes should be counted, and the majority of the votes cast was against a repeal: *Held* that the insertion of that section did not render the act unconstitutional, although the Assembly cannot delegate its power of enacting laws, nor make the existence of a law depend in whole or in part upon the will of any other body.

*Semble*, That if a majority of the votes cast had been in favor of a repeal, the act would nevertheless have continued in force until repealed by act of the Assembly.

One portion of a legislative act may be declared unconstitutional and other portions be held constitutional and valid.

[Present, the Chief Justice, and his three Associates.]

THIS was a complaint and warrant, charging that the defendant, at Newport, in the county of Newport, on the 1st of July, 1853, and on various other days and times between that day and the 18th day of March, 1854, did unlawfully sell and suffer to be sold, ale, wine, rum, &c., against the statute, &c. Upon arraignment before the Court of Justices of Newport, the defendant pleaded not guilty, and also filed a written motion that the complaint and warrant be quashed, averring " that the act of the General Assembly, for the alleged violation of which he is prosecuted, is unconstitutional and

contrary to and in violation of the Constitution of the State, and of the United States, and is null and void." The Court adjudged the law constitutional, and the defendant, upon trial, being pronounced guilty, a certified copy of the whole case was filed in this Court, pursuant to statute of Jan. 1854, (P. L. p. 1029) for a hearing of the constitutional question presented.

*Carpenter* and *W. H. Cranston* for defendant.

*Burgess, Attorney General,* and *Sheffield* for the State.

BRAYTON, J. The question raised in this case is, whether the act entitled " An act for the more effectual suppression of drinking houses and tippling shops," passed at the January session, 1853, is now constitutionally in force.

The counsel for the defendant contend that it is not, and their argument is, that by the constitution, which is declared to be the supreme law of the State, all the powers of government are distributed into three departments, the legislative, executive and judicial, and by section second of Article III. the legislative power is vested in the General Assembly, composed of the Senate and House of Representatives, and the concurrence of the two houses made necessary to the enactment of laws : that by virtue of these provisions, all the legislative power which could or might, under a pure democracy, be exercised by the people, is prohibited to them as well as to the other departments of the government : that by the provisions of the 19th section of the act, a question whether the said act should be in force or not, was made to depend upon the votes of the people,

State (Jeremiah Brown, com.) *v.* Augustus B. Copeland.

to be given at the succeeding April election, and not upon the will of the General Assembly, as the constitutional provisions before mentioned require.

The constitution of this State has vested in the General Assembly alone, composed of the two houses, the power of enacting laws. This power is confided to them as a high trust, to be exercised with a single eye to the good and well being of the whole. It cannot be delegated. The General Assembly can not call to their aid any other body, and make the existence of a law depend, in whole or in part, upon the will of such other body.

If the act, now in question, was to depend upon the vote of the people, whether it should have been originally in force or not, either by leaving it wholly to the expressed will of the people, or by requiring their concurrence with the will of the General Assembly before it could take effect, then indeed it might be obnoxious to the objection urged, because it was thereby left dependent for its original existence upon the action of those to whom legislative power is clearly prohibited, and upon whom the General Assembly had no power to confer it.

The 19th section of the act does not, however, confer, nor does it purport to confer upon the people the power of putting this act in force, or of contributing to that effect. The provision of this section is, "The legal voters in the several towns, may, at the annual election in April next, vote upon the question of repealing this act," and, proceeding to provide for the manner of returning and counting the votes at the next May session, provides further, that "in the event of a majority of such ballots being cast in favor of the repeal of the act, the

same shall be limited in its operation, and have no effect after the tenth day from and after the rising of the General Assemly at said May session.

The subject upon which these votes were to be given was not the enactment of a law, but the repeal of an act already put in force by the act of the General Assembly, and which, but for this vote, was to continue in force. The vote of the people was to have no effect unless it should be for repeal. Had they not voted at all upon the question, the law would have been unaffected, and equally so is it, since the vote was against the repeal of the act—against the exercise of any power over it.

Had a majority of the ballots been found to be in favor of the repeal, a question might then have been raised whether the law were not still in force, whether an act which had been constitutionally passed and put in force by the General Assembly could be repealed by the acts, or at the will of any other body.

But that question does not arise here. The contingency upon which the act was to be repealed has not arisen, and it therefore remains with all the force and effect originally given to it by the vote of the General Assembly in January 1853, and as if the 19th section had been entirely omitted.

We suppose there can be no doubt that one portion of an act may be declared unconstitutional, and the residue of the same act constitutional and valid. In such case, the portion so declared to be unconstitutional is as if it had never been passed, even in form, and the portion declared to be constitutional must remain in full force as if that had been the whole of the act originally

State (Jeremiah Brown, com.) *v.* Augustus B. Copeland.

In this case, therefore, the first eighteen sections of the act must, for any objection now made, be deemed to have been in force from the time of their enactment by the General Assembly in January 1853, and as if the 19th section had not been added thereto.

The provisions of the 19th section might as well have been made the object of a distinct and separate act. Had they been embodied in such an act, there could be no difficulty in determining the effect.

It would be simply an act to repeal an existing act, which could be passed by the General Assembly alone. If passed in any other mode, or by any other body than that prescribed by the constitution, it would be simply void, and would not affect the act which it was designed to repeal.

We are therefore all of opinion that for any objection now made, or for anything contained in the said 19th section, the said act is constitutional and valid.

*Case remanded, with an order to the inferior Court to proceed.*

---

MEMORANDUM.—The Hon. RICHARD W. GREENE, on the 14th of June, 1854, resigned the office of Chief Justice. On the 2d of November following, Hon. WILLIAM R. STAPLES was elected Chief Justice, and Hon. ALFRED BOSWORTH, of Warren, and Hon SYLVESTER G. SHERMAN, of North Kingstown, were elected Associate Justices, one in place of the Chief Justice elect, the other in place of Hon. LEVI HAILE, deceased.